IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUBEN RICHARD CRAIG, III, | ) | |
|     Petitioner, | ) | Civil Action No. 09-276 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| DIGUGLIELMO, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

### II. REPORT[1]

#### A. Relevant Background

Before the Court is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner, Ruben Richard Craig, III, who is a state prisoner. On September 15, 2004, an Erie County jury found him guilty of several crimes, including two counts of aggravated assault. Keith Clelland, Esquire, represented him at his trial. In the instant petition, Craig raises three claims in which he contends that Clelland provided him with ineffective assistance, in violation of his Sixth Amendment rights. As relief, he seeks a new trial.

The Superior Court of Pennsylvania summarized the relevant facts of this case as follows:

---

[1] Respondents have submitted all relevant transcripts and the Common Pleas Court's file, which contains documents indexed 1 through 53. The Common Pleas Court's file shall be cited to as "CP Dkt. No. __ ."

1

In the early morning hours of March 30, 2004, Craig hailed a taxicab at the intersection of Tenth and State Streets in Erie, Pennsylvania. Donald E. Osborne ("Osborne") was driving the taxicab. Upon entering the taxi, Craig informed Osborne that his desired destination was near the Millcreek Mall. While *en route*, Craig engaged Osborne in a conversation about the fact that Erie taxicabs did not have safety glass separating the driver and passengers. Craig also asked Osborne if he carried a gun, to which Osborne responded that he did not. Craig then informed Osborne that he no longer wished to proceed to his original destination and wished to proceed to the intersection of Young and Cherry Roads. Since Osborne was not familiar with Young Road, Craig provided directions. However, Craig led Osborne to a dead end road near the intersection of Hilltop and Arlington Roads, at the end of which there was an embankment and steep hill. Osborne did not notice any street signs or other signs that would indicate that he was approaching a dead end road.

Upon arriving at the dead end, Craig informed Osborne that he wanted to get out and walk down the steep hill. Craig paid Osborne four dollars. Craig then pulled Osborne's neck from behind and sliced Osborne's throat with a knife. Craig pulled Osborne's body toward him again and attempted to cut Osborne's throat a second time. Osborne attempted to fight back and grab Craig's knife. In doing so, Osborne suffered cuts to two of his finders. While attempting to fight Craig, Osborne's foot slipped from the brake pedal and the vehicle lurched forward, causing Craig to fall into the front seat. As the vehicle continued to advance forward toward the hill, Craig escaped. The vehicle eventually hit a dirt mound, and trees stopped the vehicle from rolling down the hill.

Osborne was able to get out of the vehicle and found a nearby home with a light on. Osborne pounded on the door for help. Eileen McCormick ("McCormick") opened her door to find Osborne bleeding profusely on her front porch. As McCormick called 911 for assistance, Craig approached McCormick's house yelling, "Fire, Fire." McCormick pulled Osborne into her house and locked the door. Craig remained on McCormick's front lawn for a period of time until a rescue vehicle responded.

When police investigated the scene, they found Craig's knife under the passenger side of the vehicle. After securing a description of Craig from McCormick and Osborne, Officer Mark Bellotti ("Officer Bellotti"), of the Erie Bureau of Police, searched the area for an individual matching Craig's description. Officer Bellotti located Craig walking on the 4700 block of Glenwood Park, near the McCormick residence, and arrested him. Osborne subsequently identified Craig from a photo array.

Craig was charged with attempted homicide, aggravated assault under section 2702(a)(1), aggravated assault under section 2702(a)(4), recklessly endangering another person, and possessing an instrument of crime. At trial, Craig testified that Osborne drove the cab into an area that Craig was unfamiliar with, Craig asked Osborne several times to be let out of the cab and Osborne did not comply, Craig pulled a knife and held it close to Osborne's body so that Osborne would let him out, and Craig was suddenly pulled back and thrown forward, at which point Craig lost his knife. A jury found Craig

not guilty of attempted homicide, but guilty of the remaining crimes following a two day
trial.

On November 10, 2004, the trial court sentenced Craig to a prison term of four to ten
years on the conviction of aggravated assault under section 2702(a)(1), and to a
concurrent prison term of three to twenty-four months for the conviction of possession of
an instrument of crime. The trial court determined that Craig's convictions of aggravated
assault under section 2702(a)(4) and recklessly endangering another person merged with
his aggravated assault conviction under section 2702(a)(1) for sentencing purposes.

(CP Dkt. No. 27, Commonwealth v. Craig, No. 2125 WDA 2004, slip op. at 1-4 (Pa.Super. Mar. 22, 2006)).

Craig, through Attorney Clelland, filed a direct appeal with the Superior Court and a Statement of Matters Complained Of On Appeal, pursuant to Pa.R.A.P. 1925(b). (CP Dkt. No. 17). On February 23, 2005, the trial court issued a 35-page Rule 1925(b) Opinion in which it explained that all of the issues raised on appeal lacked merit. (CP Dkt. No. 19, Commonwealth v. Craig, No. 1332 of 2004, slip op. (C.P. Erie Feb. 23, 2005)).

Thereafter, Craig decided that he wanted to represent himself. On May 18, 2005, the Superior Court remanded for a hearing to determine if his desire to proceed *pro se* was knowing, voluntary, and intelligent. (CP Dkt. No. 24). Following the hearing, Craig was permitted to proceed *pro se*, however, he remained bound by the Rule 1925(b) Statement filed by Clelland. On March 22, 2006, the Superior Court issued a Memorandum in which it affirmed Craig's judgment of sentence. (CP Dkt. No. 27, Craig, No. 2125 WDA 2004, slip op.).

On May 30, 2006, Craig filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* (CP Dkt. No. 28). Therein, Craig raised, *inter alia*, the same three ineffective assistance claims that he raises in this proceeding:

1. Clelland was ineffective for not preserving on direct appeal the claim that the trial court erred when it refused to provide a dual instruction on accident and self-defense;

3

2. The trial court's self-defense instruction was erroneous and Clelland was ineffective for failing to preserve the issue on direct appeal;

3. Clelland was ineffective for soliciting "expert" testimony from Officer Gould, a prosecution witness, regarding whether the knife used in the crimes was a deadly weapon.

The PCRA Court appointed William J. Hathaway to represent Craig. He notified the court that he wanted to proceed *pro se*, however, and following a hearing he was permitted to do so, with Hathaway acting as standby counsel.

On October 17, 2006, the PCRA Court issued a 15-page notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, and the following month it officially denied the petition. (CP Dkt. No. 42). Craig appealed to the Superior Court. On February 5, 2007, the PCRA Court issued a 16-page 1925(b) Opinion in which it concluded that Craig's appeal issues had no merit. (CP Dkt. No. 46, Commonwealth v. Craig, No. 1332 of 2004, slip op. (C.P. Erie Feb. 5, 2007)).

On March 7, 2008, the Superior Court issued a Memorandum in which it affirmed the decision of the PCRA Court. It denied each of the claims at issue on the merits. (CP Dkt. No. 51, Commonwealth v. Craig, No. 159 WDA 2007, slip op. (Pa.Super. Mar. 7, 2008)). On October 16, 2008, the Supreme Court of Pennsylvania denied a petition for allowance of appeal.

In this habeas action, Craig claims that the state court erred in denying the claims set forth above, and contends that he is entitled to a new trial. Respondents have filed their Answer (ECF No. 12) and all relevant state court records.

4

B.  **Discussion**

1. **Standard of Review**

Because the Superior Court rejected Craig's claim on the merits, this Court's analysis is governed by the Antiterrorism and Effective Death Penalty Act's ("AEDPA's") standard of review, which modified "a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As codified at 28 U.S.C. § 2254(d), AEDPA restricts a federal court's authority to grant relief when, as is the case here, the state court has "adjudicated on the merits" the petitioner's federal constitutional claims. In such cases, federal habeas relief may only be granted when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).[2] Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).

As the Supreme Court recently observed:

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of

---

[2] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 405-06. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular…case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. at 234, quoting Williams, 529 U.S. at 407.

5

> claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011). See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of United States Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").

    **2.    Analysis**

The "clearly established Federal law" for AEDPA purposes in which to analyze Craig's claims of ineffective assistance is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Craig first must show that Clelland's representation fell below an objective standard of reasonableness. 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. The law presumes that Clelland was effective:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse

> sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Strickland, 466 U.S. at 689 (internal citations and quotations omitted). The Court of Appeals for the Third Circuit has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997), quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Strickland also requires that Craig demonstrate that he was prejudiced by Clelland's alleged deficient performance. "This requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, Craig "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Superior Court applied the correct legal standard when it evaluated Craig's claims. (CP Dkt. No. 51, Craig, No. 159 WDA 2007, slip op. at 7). See also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, the Superior Court's adjudication passes federal habeas review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406.

Thus, the only remaining question for this Court to decide is whether the Superior Court's adjudication of any of Craig's claims was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. 111, __, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788.

### (a) The trial court's refusal to give an "accident" instruction, and Clelland's failure to preserve the issue on direct appeal

During Craig's trial, the prosecutor objected to the defense proposal that the jury receive both a justifiable self-defense instruction and an instruction that it could find that the Craig cut Osborne accidentally. (Day Two Trial Tr. at 239). The following exchange then occurred:

Prosecutor: [I]t's justification or accident, but I don't think you can have both.

Clelland: And I understand the Commonwealth's argument.

Court: What accident?

Prosecutor: Exactly.

Clelland: If I may have a moment to discuss this with my client.

        (Discussion off the record).

Clelland: I would like the justification [self-defense instruction], Your Honor.

8

|            | - - -                                                                                                                                                                                                                                                                                                                  |
|------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | [J]ust so I plainly put this on the record, my client's testimony was that he pulled the knife in self-defense and that – and that how the witness got cut is accidental. So – and I understand how you've ruled already, that you've ruled it's either self-defense or accidental. So – but I – I am of the opinion personally that I need to use the self-defense, the justification. |
| Court:     | Right.                                                                                                                                                                                                                                                                                                                   |
| Clelland:  | And that's what I'm requesting.                                                                                                                                                                                                                                                                                          |
| Court:     | Where is the accident? What are you talking about?                                                                                                                                                                                                                                                                       |
| Clelland:  | It was his testimony, Judge. That was the defendant's testimony.                                                                                                                                                                                                                                                         |
| Prosecutor:| But it can't be an accident if he pulled the knife to start with.                                                                                                                                                                                                                                                        |
| Court:     | Yes.                                                                                                                                                                                                                                                                                                                     |
| Clelland:  | I agree.                                                                                                                                                                                                                                                                                                                 |
| Court:     | Yes. There's no accident here.                                                                                                                                                                                                                                                                                           |
| Clelland:  | I agree.                                                                                                                                                                                                                                                                                                                 |
| Court:     | You don't – I mean, it wasn't like they were showing each other their weapons –                                                                                                                                                                                                                                          |
| Prosecutor:| Right.                                                                                                                                                                                                                                                                                                                   |
| Court:     | --- and somebody fell into the other person. There was no – no testimony like that.                                                                                                                                                                                                                                      |

(Day Two Trial Tr. at 239-43).

Craig contends that the trial court erred by not providing the jury with the requested instruction and that Clelland was ineffective for failing to raise the issue in the direct-appeal 1925(b) Statement. In adjudicating this claim in the PCRA proceeding, the Superior Court held:

[W]e determine [Craig] was not entitled to the accident instruction. His testimony that he intentionally pulled the knife and held it against Osborne's chest because he felt threatened precluded any instruction on mistake or accident. [Craig's] actions of pulling

9

the knife, holding it next to Osborne's body, and "grabbing down" on Osborne precipitated the "accident" that followed when the vehicle lurched forward and rolled down the embankment. Compare Commonwealth v. Harris, 542 Pa. 134, 139-140, 665 A.2d 1172, 1175 (1995) (defendant not entitled to self-defense instruction where he testified the shooting was unintentional; under such circumstances, self-defense and the defense of mistake or accident are mutually exclusive) (collecting cases). As the underlying issue is without merit, trial counsel cannot be deemed ineffective for failing to preserve it for appeal.

(CP Dkt. No. 51, Craig, No. 159 WDA 2007, slip op. at 12).

There is no basis for this Court to disturb the Superior Court's decision under AEDPA's deferential standard of review. In Pennsylvania, trial counsel generally is not precluded from advancing alternative defenses on behalf of a criminal defendant, even when those defenses are inconsistent. See e.g., Commonwealth v. Legg, 711 A.2d 430, 450 (Pa. 1998) (Castille, J., dissenting) (collecting cases). Nevertheless, the defense of self-defense "is mutually exclusive of the defense of accident or mistake" in many cases, see Harris, 665 A.2d at 1175, as it was in Craig's case. A jury instruction for accident in his case would indicate that he sliced Osborne repeatedly with a knife, allegedly during the course of a vehicle accident. In contrast, a jury instruction for self-defense would indicate that he sliced Osborne repeatedly with a knife in order to protect himself. Under the specific facts of Craig's case, this Court cannot conclude that it was objectively unreasonable for the Superior Court to hold that it was incompatible to state that he accidentally harmed the victim and that he intentionally harmed him in self-defense. Therefore, this Court cannot conclude that Craig is entitled to habeas relief on his claim that Clelland was ineffective for failing to preserve the issue for appellate review.

> **(b) Was Clelland ineffective for failing to object to the trial court's self-defense instruction and for failing to preserve the issue on direct appeal?**

In his next claim, Craig objects to the wording used by the trial court in its introductory instruction regarding self-defense. The trial court stated to the jury: "The defendant claims he cut Donald Osborne in self-defense." (Day Two Trial Tr. at 63). Craig contends that it should have stated: "The defendant claims he drew a knife in preparation to use it against the victim in self-defense." He argues that the statement made by the trial court was inaccurate and prejudicial because he testified that he drew the knife in self-defense, but cut Osborne by accident due to the movement of the vehicle. Clelland objected to the instruction before the trial court (Day Two Trial Tr. at 242), but did not raise it in the direct-review 1925(b) Statement, and Craig claims he was ineffective for failing to do so.

The Superior Court's rejection of this claim was neither an objectively unreasonable application of <u>Strickland</u> or an unreasonable determination of the facts:

> Despite [Craig's] assertions to the contrary, it was not disputed at trial that his knife cut Osborne's throat. Rather, [he] argued that he pulled the knife and placed it against Osborne's chest in self-defense and then cut Osborne's throat accidentally when the vehicle moved. Although [Craig] contends the trial court's instruction should have stated, "The defendant claims he drew the knife in self-defense," or words to that effect, it is a distinction without a difference…. [Craig] is held to the logical consequences of pulling his knife and holding it to Osborne's chest. The trial court properly refused to give both a self-defense instruction and an accident instruction; defense counsel chose the self-defense instruction…. The court's instruction to the jury adequately and accurately reflected the law and was sufficient to guide the jury through its deliberations and, in fact, mirrored the suggested standard jury instruction on self-defense and justification. [<u>Commonwealth v. Dietterick</u>, 631 A.2d 1347, 1352 (Pa.Super. 1993)]; Pa.SSJI (Crim 9.505.)

(CP Dkt. No. 51, <u>Craig</u>, No. 159 WDA 2007, slip op. at 9-10).

Craig's argument that the instruction was in error because the court stated he "claims he cut" Osborne in self-defense rather than he "claims he drew the knife in self-defense," is, as the Superior Court concluded "utterly specious." (<u>Id.</u> at 10 n.6). He attempts to "split hairs" by arguing that in his

11

testimony he never specifically admitted to cutting Osborne. The fact is, however, as the Superior Court noted, "he did not deny it either; and it was never in dispute at trial that [Craig] drew the knife, held it to Osborne, and that [his] knife inflicted the wounds to Osborne's throat, shoulder, and hand." (Id.)

In sum, Craig has not shown that he is entitled to habeas relief on this claim and it must be denied.

### (c) Was counsel ineffective for eliciting testimony from Officer Gould that the knife used in the crime qualified as a deadly weapon?

In his final claim, Craig argues that Clelland was ineffective for eliciting what he calls "expert testimony" from Officer Gould that the knife was a deadly weapon. By way of background, on cross-examination, Clelland questioned Officer Gould about the knife:

> Q. …. This is a pocket knife…. Obviously, you could kill someone with this thing if you used it enough in the right way.
>
> A. Yes, sir.
>
> Q. It's not made for killing, though, is it?
>
> A. It can easily be used to do anything you want with it, and killing is something you could easily do with that weapon.
>
> Q. You could do – you could kill someone with this?
>
> A. Very easily.
>
> - - -
>
> Q. Okay. But you would agree with me this is not a K Bar [knife], which is specifically made to kill?
>
> A. … I wouldn't say that. I wouldn't say that, sir, because I also carry a fighting knife that's a folder on me currently, and it's very similar design to that, and it's designed specifically for fighting.

(Day Two Trial Tr. at 79-81).

12

From a review of the trial transcript, it appears to the Court that Clelland was attempting to make the point that the knife Craig used during the incident was not necessarily the type of weapon he would have used if it was his intent to kill or cause serious bodily injury. Whether counsel should have pursued that line of questioning is not one this Court needs to explore. That is because the Superior Court held that Craig was not prejudiced by any alleged ineffectiveness on Clelland's part. The jury found him not guilty of attempted murder. It also determined that "Officer Gould's testimony was consistent with [Craig's] own testimony concerning the knife and the incidents that occurred…. In addition, this court has already determined, as a matter of law, that [Craig's] knife used in this crime constituted a 'deadly weapon.'" (CP Dkt. No. 51, Craig, No. 159 WDA 2007, slip op. at 18).

In order for Craig to receive habeas relief from this Court, it is not enough for him to establish that, but for Clelland's alleged ineffectiveness, there is a reasonable probability that the outcome of his trial hearing would have been different. Rather, he must establish that the Superior Court's determination that he did not show that he was prejudiced is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 787. Craig has failed to meet this "substantially higher threshold." Schriro, 550 U.S. at 473. Therefore, this claim must be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

13

constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Craig's claims should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: September 16, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge